438    APPELLATE COURTS OF ILLINOIS.

VOL. 63.]    Byrne v. Chicago General. Ry. Co.

# John J. Byrne v. Chicago General Railway Co. and City of Chicago.

1. CITY OF CHICAGO—*Power in Granting Privileges to Street Railroad Companies.*—The city of Chicago is not limited to a simple denial or granting of a privilege or franchise to a street railroad company. It may prescribe the terms upon which the privilege shall be conditioned if conferred, and by accepting the privilege so burdened the company becomes bound to comply with the terms imposed.

2. SAME—*License Fees.*—A license fee may be properly exacted by the city of Chicago from a street railroad company for the running of its cars in the streets, and where a company accepts a franchise from the city burdened with a provision for a license fee for each car run, etc., and acts under such franchise, such acceptance makes a complete and valid contract with reference to the imposed license fees.

**Bill for an Injunction.**—Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed April 13, 1896.

SMITH & BARTON, attorneys for plaintiff in error.

A street railway company is a common carrier of passengers for hire, and as such is subject to all the rules of law relating to common carriers, and among these is the one that prevents it from charging more than what is reasonable for its services. C. C. Ry. Co. v. Engel, 35 Ill. App. 491; N. C. St. Ry. Co. v. Williams, 140 Ill. 275; N. C. St. Ry. Co. v. Wrixon, 51 Ill. App. 308; N. C. St. Ry. Co. v. Cook, 145 Ill. 553; N. C. St. Ry. Co. v. Coitt, 50 Ill. App. 640; Ruggles v. People, 91 Ill. 256; 108 U. S. 526; C., B. & Q. R. R. v. Iowa, 4 Otto (U. S.), 156; Munn v. Illinois, 69 Ill. 80; 4 Otto (U. S.), 113.

A street railway company is quasi-public in its character, and, like a general railway company, owes duties to the public which can not be abridged by contract. M. & O. R. R. Co. v. People, 132 Ill. 559–570; Bestor v. Wathen, 60 Ill. 138; Linder v. Carpenter, 62 Ill. 309; Marsh v. Fairbury, etc., R. R., 64 Ill. 414; St. L., J. & C. R. R. Co. v. Mathers,

71 Ill. 592; 104 Ill. 257; People v. C. & A. R. R., 130 Ill. 175.

The city of Chicago has, under its expressed police powers, authority to impose license fees on street railway companies. Allerton v. Chicago, 6 Fed. Rep. 555; Frankfort, etc., Pass. Co. v. Phila., 58 Pa. St. 119; Clause 42, Sec. 62, Chap. 24, R. S.

When a municipality, under its police powers, is authorized to require payment of a license fee, the same must be uniform upon all of the class licensed, and it may be sufficient to compensate for the extraordinary policing demanded by the carrying on of the occupation licensed. East St. Louis v. Wehrung, 46 Ill. 392; Walker v. Springfield, 94 Ill. 364; Braun v. Chicago, 110 Ill. 186; Wiggins Ferry Co. v. East St. Louis, 102 Ill. 560; Concordia Cemetery Ass'n v. M. & N. W. R. R. Co., 121 Ill. 203; Cooley, Const. Law, 6th Ed. 200; Cairo v. Fenshaw Bros., 54 Ill. App. 112; Zanone v. Mound City, 103 Ill. 552.

A municipal corporation can not grant for a private exclusive use, any part of a street; the use must be for the public, though the trustee or one who holds for the public use may be private. Moses v. P., Ft. W. & C. Ry. Co., 21 Ill. 516; C., D. & C. Co. v. Garrity, 115 Ill. 155; C., B. & Q. R. R. v. Quincy, 126 Ill. 563; Field v. Barling, 149 Ill. 556.

A municipality can not contract except as it is authorized, and is confined in its sources of revenue to those enumerated in its charter. Hamilton v. Shelby, 33 N. E. Rep. 1007; Nashville v. Sutherland, 21 S. W. Rep. 674; City of Cairo v. Bross, 101 Ill. 478; Mather v. Ottawa, 114 Ill. 659; Chicago v. McCoy, 136 Ill. 344, 351; Twinning v. Elgin, 38 Ill. App. 356, 361; McKinney v. Alton, 41 Ill. App. 508; Champaign v. Harmon, 98, 491; Gaddis v. Richland Co., 92 Ill. 119; Cook County v. McCrea, 93 Ill. 238; La Salle Co. v. Simmons, 5 Gilm. 513; Aberdeen v. Honey, 8 Wash. 251; Herzo v. San Francisco, 33 Cal. 134.

William G. Beale, corporation counsel; George A. Du-

PUY, assistant corporation counsel; ELBERT H. GARY, special counsel; attorneys for city of Chicago, defendant in error.

The complainant, as a stockholder, has stated no facts justifying his interference on behalf of the corporation.   Hawes v. Oakland, 104 U. S. 450; Detroit v. Dean, 106 U. S. 537; Wheeler v. Pullman I. & S. Co., 143 Ill. 197; Bruschke v. North Chicago S. Verein, 145 Ill. 445; Gamble v. Queens Co. Water Works, 123 N. Y. 99; Thompson's Com. on Law of Corp., Vol. 4, Secs. 4500, 4508, 4510, 4566 and 4567; Story's Eq. Pleading, 10th Ed., Sec. 126; Higgins v. Lansingh, 154 Ill. 345.

The bill shows no legal injury done or threatened to the corporation.   People v. City of Chicago, 27 Ill. App. 217.

The special ordinance under which the General Railway Company and its lessor have been operating their lines is not a mere license but a contract between the city and the company, equally binding on both.   The rights acquired thereunder by the company are property.   Brooklyn Central R. R. Co. v. Brooklyn City R. R. Co., 32 Barb. 364; People v. O'Brien, 111 N. Y. 1; R. R. Co. v. Delamore, 114 U. S. 501; N. Y. Gas Light Co. v. Louisiana G. L. Co., 115 U. S. 659; Gas Light Co. v. Town of Lake, 130 Ill. 55, 56; City of E. St. Louis v. Wehrung, 46 Ill. 392.

The special ordinance was not *ultra vires* but was clearly within the statutory powers of the city of Chicago.   2 Dillon on Mun. Corp., 4th Ed., Sec. 706; Elliott on Roads and Streets, 565; Rev. Stat. of Ill., Chap. 66; City of Phil. v. Ridge Ave. Ry. Co., 22 Atl. Rep. 695; Hunt v. Chicago, H. & D. Ry. Co., 121 Ill. 638.

The special ordinance repealed the general ordinance in so far as this company and its lessor are concerned.   Booth v. Town of Carthage, 67 Ill. 103; 23 Am. & Eng. Enc. of Law, 430, 483; Devine v. Cook County, 84 Ill. 590; State v. Morristown, 33 N. J. L. 61; Hussey v. Mech. Nat. Bank, 10 Pick. 421; State v. Vic De Bar, 56 Mo. 395; Dewey v. Central Car Co., 42 Mich. 402; Wilson v. Ohio & Miss. Ry. Co., 64 Ill. 542; 1 Dillon, Mun. Corp., Vol. 1, Secs. 87, 88 and notes; Allerton v. Chicago, 6 Fed. 555.

The railway company, and therefore the plaintiff in error also, are estopped to deny the validity of the special ordinance. Schwuchow v. City of Chicago, 68 Ill. 444; Wiggins Ferry Co. v. E. St. Louis, 102 Ill. 560; Launder v. City of Chicago, 111 Ill. 91.

C. C. & C. L. Bonney and Lyman M. Paine, attorneys for Chicago General Ry. Co.

The ordinance of the defendant company is a contract under which vested rights have been acquired. Belleville v. Horse Railway, 152 Ill. 186.

Mr. Justice Shepard delivered the opinion of the Court.

The plaintiff in error is a stockholder in the Chicago General Railway Company, and filed this bill for an injunction to restrain the city of Chicago from compelling said General Railway company to pay any sum or sums of money computed or to be computed under section 7 of a special ordinance of the city of Chicago, passed February 8, 1892.

To his bill the defendants in error separately demurred, and such demurrers having been sustained, the bill was dismissed for want of equity.

The correctness of that decree of dismissal is called in question.

The Chicago General Railway Company is, and has been since April 3, 1894, an operator of all the lines of street railroads constructed and operated by the West and South Towns Railway Company, under two special ordinances of the city of Chicago granting the right to said Towns Railway company to lay down and operate a street railway upon certain of the city streets, and passed, respectively, February 8, 1892, and April 5, 1893.

Said section 7 is a part of the said special ordinance passed February 8, 1892, and is, together with sections 8 and 12 of the same special ordinance, as follows :

"7.   The said company shall pay into the city treasury of the city of Chicago, for the use of said city, the sum of

fifty dollars ($50) as an annual license fee for each and every car used by said company in the manner following : In computing the number of cars upon which said license charge may be imposed, thirteen round trips, when the car is used in the transportation of passengers, shall be taken as equivalent to one day's use of one car; one thirteenth of such round trips during each quarter shall be divided by the number of days in such quarter; such quotient shall be the number of cars subject to such license fee; provided, however, that such cars shall not already be liable for the payment of a license fee on one or the other lines of this company or its connections. The president or other chief officer of said company shall, under oath, make report quarter yearly to the comptroller of the city of Chicago of the whole number of cars so run by said company, and, at the same time, pay to said comptroller twelve and one-half dollars ($12.50) for each car to be ascertained as above prescribed in this section. The first quarter shall begin on the first day upon which the said company shall run a car or cars for the carriage of passengers.

8.   The rights, privileges and franchises herein conferred are granted upon the further condition and consideration that on and after December 1, 1895, the said company or their legal assigns, or any person, firm, company or corporation in any way claiming under or through them or operating the road herein authorized, shall pay into the city treasury of the city of Chicago, annually, for each and every lineal mile of their track laid under the provisions of this ordinance, and a proportionate amount for any fraction of a mile laid as herein authorized, the sum of five hundred dollars ($500). The payments under the conditions herein prescribed shall be due and payable on the first day of December of each year, and the first payment due, as herein prescribed, to be made on the first day of December, 1896.

12.   The franchises granted by this ordinance, except as herein specially provided, are granted subject to all general ordinances of the city of Chicago concerning horse railroads now in force, or which may hereafter be passed by said city under its police powers."

And section 2 of the said special ordinance of April 5, 1893, contained the following provision, to wit:

"All cars run on said line shall pay an annual license fee of fifty dollars ($50) for each year, to be computed as provided in said ordinance of February 8, 1892."

In addition to the provisions so quoted from said special ordinances, under which the Towns Railway company, the lessor of the General Railway company, obtained its right to lay down tracks and operate a street railway, there is, and was at the time of the passage of said two special ordinances, and had been for many years before that time, a general ordinance of said city in force (section 1506 of the Municipal Code) concerning license fees to be paid by the operators of street railway cars, as follows:

"It shall be the duty of every person, firm, or corporation engaged in the occupation of operating and running street cars for the conveyance of passengers upon any line of horse or city railway, within the city of Chicago, in the month of April of each year, to apply for and obtain from the city of Chicago a license therefor, for which said license every such person, firm or corporation shall, at the time application is made for such license, pay into the treasury of said city the sum of fifty dollars for each car operated and run or proposed to be operated and run by such person, firm, or corporation, during the year. Any person, firm, or corporation engaged in the occupation aforesaid failing or refusing to take out a license therefor, as above required, shall be subject to a fine of not less than five dollars, and not more than two hundred dollars; and a failure to obtain such license for each day that the same shall continue shall be deemed a separate and distinct offense, and violation of this article."

Besides alleging the facts so set out, the bill alleges, as set forth in the abstract, as follows:

"That besides said defendant company, there are six or more separate and distinct corporations, each operating separate and distinct lines of street railways, along the streets within the corporate limits of Chicago, under ordi-

nances, some of which contain sections similar to those above quoted from the ordinances of February 8, 1892, and April 5, 1893, and some making no mention whatever of licenses or license fees; that since April 3, 1894, said Chicago General Railway has computed license fees to be paid into the city treasury not on the basis of the actual number of cars run, but upon the basis of the number of trips made by all cars of said company; that said company is at all times liable in law to pay a license fee under said section 1506 of the Municipal Code, and the same is not waived, liquidated or satisfied in whole or in part by any payments made under section 7 of the ordinance of February 8, 1892; wherefore any payment not made in pursuance of said general ordinance is a misappropriation of the funds of said company; that said company owns thirty-three cars, and operates or proposes to operate them on said lines, and should have paid as license fees therefor $1,650, and is still liable therefor. Nevertheless, regardless of complainant's protests and remonstrances, it now threatens to pay said city $250, computed to be one quarterly installment under said section 7, and will pay the same unless restrained; whereby the funds of said company will become unlawfully misappropriated and wasted, to the injury of complainant as a stockholder."

And the prayer of the bill is, that said section 7 of said special ordinance of February 8, 1892, be declared *ultra vires* and void, and that the city be perpetually enjoined from compelling payment of any sum computed or to be computed under said section 7, and for general relief.

The question so presented is whether the special ordinances referred to are valid corporate acts of the city of Chicago, and binding upon the railway company.

Of that we do not think there can be much doubt. It is too late to deny to the city the power to grant privileges, either by way of binding contract or of revocable license, to street railway companies to lay down tracks and operate them in and along the streets of the city, or the power of such companies to agree with the city concerning the terms upon which they will accept such privileges.

The ordinances of which the quoted sections were a part, constitute the authority under which the railway company laid its tracks and operates its cars, and section 7 was one of the terms to which the company agreed when it accepted the ordinances; and it is immaterial whether the accepted ordinances shall be treated as contracts or as mere licenses.

The city was not limited to a simple denial or granting of the privilege, but might prescribe the terms upon which the privilege should be conditioned, if conferred; and by accepting the ordinances so burdened with the terms, the railway company became bound to pay the license fee so long as it enjoys the privileges conferred by the ordinances. 2 Dillon on Mun. Corp. (4th Ed.), Sec. 706.

And a license fee could properly be exacted by the city, and being agreed to, the company can not avoid it. Elliott on Roads and Streets, 565.

It would be most unjust to hold that the city, having the power to either confer or refuse the privilege, and having exercised the power upon terms accepted by the grantee and long acted upon, should be denied enforcement of the terms. If on no other ground, the railway company should be prevented by the familiar. doctrine of estoppel from escaping its liability to pay.

And what would be denied to the company in such regard, if it were the actor in these proceedings, should be denied to its stockholders.

We do not consider it necessary to speak of the effect of these special ordinances upon the general section 1506 of the municipal code.

It is enough that the ordinances, accepted and acted under, make a complete and valid contract with reference to the imposed license fee; and whether the ordinances operated to repeal said section 1506, or operated to create an additional burden upon the company, is not necessarily here involved. And the same might be said of the alleged fact concerning the terms upon which other companies were granted similar privileges. By accepting the ordinances and acting under them, a contract was entered into, or, at

least, a license was obtained by the railway company, and it does not matter whether the bargain that the particular company so obtained was as good as that which some other companies, exercising similar privileges, enjoy, or not.

There is nothing partaking of the element of taxation, or of the establishment of general license fees upon occupations, and therefore demanding uniformity, involved in this question, where, simply, in consideration of the conferring of special privileges in certain public streets, the donee of such privileges agreed to pay a certain sum for each car it should operate upon said streets.

The terms imposed by section 7 were clearly within the power of both parties to agree to, and we can see no ground upon which the decree should be reversed. It will therefore be affirmed.

MR. JUSTICE WATERMAN.

Whether either special ordinance was more than a license, as well as whether by either the general ordinance was repealed, are questions, neither of which is, as I understand, involved in this case.